J-S07045-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.C., D.C., AND D.C., Minors | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.F., Mother | : | No. 1548 MDA 2016 |

Appeal from the Orders entered August 22, 2016
in the Court of Common Pleas of Lebanon County,
Juvenile Division, No(s): CP-38-DP-0000025-2014,
CP-38-DP-0000026-2014, CP-38-DP-0000027-2014

BEFORE:  BOWES, LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED MARCH 21, 2017**

J.F. ("Mother")[1] appeals from the Orders finding aggravating circumstances as to each of Mother's three minor children: D.C., D.C., and D.C. (collectively, "the Children"), and changing each child's permanency plan goal to adoption.[2]  We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural history underlying the instant appeal.  ***See*** Trial Court Opinion,

---

[1] Father, whose parental rights were terminated, is not participating in this appeal.

[2] We note that Mother, while *pro se*, filed only one Notice of Appeal from the trial court's August 22, 2016 change of goal and aggravated circumstances Orders, entered as to each minor child.  Pa.R.A.P. 341 provides that where one or more orders resolve issues arising on more than one docket, or relating to more than one judgment, an appellant must file separate notices of appeal from each order or judgment.  Pa.R.A.P. 341, Note.  Nevertheless, we will address Mother's claims, as this procedural error is not fatal to Mother's appeal.

10/17/16, at 1-3. We adopt the trial court's recitation for the purpose of this appeal. *See id.*

Mother presents the following claims for our review:

1. Did the [trial c]ourt err in finding that [a]ggravated [c]ircumstances exist as to [each of the Children] and that no additional efforts should be made to reunify the minor [Children] with [their] mother, [J.F.]?

2. Did the [trial c]ourt err in ordering a change of [g]oal to [a]doption for [each of the Children]?

Brief for Appellant at 2-3 (issues renumbered and combined for clarity).

Our standard of review for dependency cases is as follows:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

As Mother's claims are related, we will address them together. Mother first claims that the trial court improperly found the existence of aggravating circumstances as to each of the Children. Brief for Appellant at 8. Mother directs our attention to evidence that the Children "have expressed a desire to return to their Mother." *Id.* Mother states that she has made arrangements to have the same apartment, an apartment approved by the Lebanon County Children and Youth Service ("LCCYS"), following her brief period of incarceration. *Id.* at 8-9. Mother further asserts that "she has arranged for her job to be available after her release." *Id.* at 9. Mother

- 2 -

recognizes that, following her release, her sentence prohibits the Children from residing with her during her term of probation. *Id.* However, Mother points out that she could still visit the Children, and resume full parental care following the conclusion of her sentence. *Id.* Mother further argues that she and the LCCYS caseworker both testified that Mother had complied with all goals and requirements imposed by LCCYS. *Id.* at 10.

In her second claim, Mother challenges the trial court's finding that it is in the Children's best interest to change their permanency goal to adoption. *Id.* at 8. Mother claims that her own testimony, and that of Elizabeth Getch ("Getch"), an LCCYS caseworker, established that the Children have expressed a desire to return to Mother, and that her parenting skills have improved. *Id.* at 8, 10. Mother asserts that she has made arrangements to have the same apartment after she is released from prison, and that her apartment previously was approved for the Children by LCCYS. *Id.* at 8-9. Mother contends that her actual period of incarceration, following her appeal, will be very brief, and that it is not in the best interest of the Children to be separated into different homes, "when she will be able to care for them all." *Id.* at 9. Mother asserts that while she cannot live with the Children during her period of probation, she may still visit with them. *Id.* Finally, Mother argues that she has complied with all of her goals set by CYS. *Id.* at 10.

In its Opinion, the trial court addressed Mother's claims and concluded that they lack merit. *See* Trial Court Opinion, 10/17/16, at 4-5. We agree with the sound reasoning of the trial court, as set forth in its Opinion, and affirm on this basis as to Mother's claims. *See id.* We additionally observe the following.

Although Mother directs our attention to the progress that she has made, our review of the record discloses additional evidence that supports the trial court's change of goal to adoption. Our review discloses that in 2006, LCCYS received a referral from the Berks County Children & Youth Agency ("BCCYA") regarding Mother and Father's two older children. N.T., 8/4/14, at 10. BCCYA had removed these two children based upon inappropriate physical discipline by Father, the fact that they were not fed properly, and that they were being left in their room with very little light. *Id.* at 11. The Berks County dependency matter terminated in May 2006. *Id.*

Mother and Father subsequently moved from Berks County to Lebanon County. *Id.* In 2011, LCCYS reopened its dependency case as to the Children, upon receiving allegations of Father's abuse of T.S., a minor cousin living at the home. *Id.* at 12-13. T.S. subsequently was removed from the home. *Id.* at 14. During that same time period, LCCYS received a report about Mother's 10-year-old son having received a black eye. *Id.* at 15. LCCYS additionally had received reports from the school of Mother's ten-

year-old son that he was not being fed properly. *Id.* at 25-26. The caseworker testified that

> [t]here were reports that the 10-year-old was having dried feces coming out of his pants. There were also reports on the 6-year-old … coming to school dirty and also having dried feces on him. But it wasn't as severe as the 10-year-old. This was prior to the 10-year-old being at grandma's house.

*Id.* at 26. The 10-year-old son was removed from the home and placed with his grandmother. *Id.*

The record reflects that on May 30, 2014, LCCYS received a report regarding a bruise on the arm of another child. *Id.* at 15. When LCCYS personnel went to the home, they discovered feces all over the Children's bedroom, with "runny poop on the floor, on the mattresses, on the walls, [and] on the [C]hildren's playsets." *Id.* at 16. The Children were found to be "filthy," smelling of urine and having feces on them. *Id.* at 16, 20. There also was a lock on the outside of the bedroom door. *Id.* at 18, 21. A wooden door separated the Children's bedroom from the next room. *Id.* at 18. "A lot of the boards had been broken out of that [door]." *Id.*

In August 2016, LCCYS presented evidence that the Children have been in foster care for 27 months. N.T., 8/22/16, at 15. CYS caseworker Getch testified that Mother was sentenced on July 20, 2016, and is prohibited from residing with the Children for a portion of her sentence, even if she is paroled. *Id.* at 27, 28. Getch testified that Mother's involvement with LCCYS was for the same conduct that took place in Berks County in

2004, with a different child. *Id.* at 30-31. In Berks County, Mother's children were returned to her care because she "had improvement, that she went through a parenting class, and that she was able to care for them and provide them protection." *Id.* at 31-32. Notwithstanding that improvement, LCCYS became involved with the family in 2011 *for the same conduct*. *Id.* at 32.

Getch also explained that at the Lebanon County Correctional Facility, the Children (ages eight, five and four years old) could only visit with Mother by talking on a telephone, while separated from her by glass. *Id.* at 38-39. Any visits would take place during visiting hours, while other inmates had visitation. *Id.* at 39. According to Getch, LCCYS recommended that if the goal is not changed, visits with Mother should take place only with the agreement of the Children's therapist. *Id.* at 38-39. Finally, Getch testified that each child was doing well in foster placement, and that each foster family is willing to be an adoptive resource. *Id.* at 39-44, 47-50.

Our review discloses that the record supports the trial court's change of goal to adoption as to the Children, and that the goal change is in each child's best interests. *See In re N.C.*, 909 A.2d 818, 825 (Pa. Super. 2006) (affirming a trial court's change of goal to adoption, and concluding that notwithstanding the mother's substantial progress toward completing her permanency plan, the record supported the trial court's factual findings that the mother's parenting skills and judgment regarding her children's well-

being remained problematic). We therefore affirm the Orders of the trial court.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/2017

# IN THE COURT OF COMMON PLEAS
## OF LEBANON COUNTY, PENNSYLVANIA

### Juvenile Division

IN THE INTEREST OF     :
  D██ C█████, a minor  :   CP-38-DP-25-2014
  D██ C█████, a minor  :   CP-38-DP-26-2014
  D██ C█████, a minor  :   CP-38-DP-27-2014
           :

## OPINION BY JONES, JR., J.:

Petitioners have appealed the Court's Order of August 22, 2016, finding that Aggravated Circumstances exist regarding all three (3) Minor Children, and the Permanency Plan Goals of the Minor Children should be changed to Adoption.

## FACTUAL AND PROCEDURAL HISTORY

On June 2, 2014, Orders for Emergency Protective Custody and Shelter Care were entered, granting Lebanon County Children and Youth Service ("hereinafter "CYS") legal and physical custody of D██ C█████ born on April 26, 2012, D██ C█████ born on October 26, 2010, and D██ █████, born on April 19, 2008, (hereinafter collectively "Minor Children"). At that time, CYS had found that the Minor Children had food restricted as a means of punishment, were locked in a bedroom that was covered in feces, and the Minor Children were also found to be covered in feces as a result of being locked in the bedroom. The Minor Children also had suspicious injuries at that time. This raised concern because on May 8, 2014, a cousin, who had been living in the home, was removed due to injuries caused by Christopher C█████ (hereinafter "Father"). The Minor Children have been in placement since Emergency Custody was granted.

2

The CYS investigation named both Jessica Flickinger (hereinafter "Mother") and Father as perpetrators of child abuse on the Minor Children. Criminal charges were filed against Father on February 27, 2015. On November 21, 2015, Father plead guilty to the charges of aggravated assault, multiple counts of endangering the welfare of children, corruption of minors, recklessly endangering another person, and harassment regarding the abuse of the Minor Children. Father was convicted and sentenced on February 3, 2016. Conditions to Father's sentence include no contact with children who are unrelated to him, and no unsupervised contact with his own children until they have reached the age of eleven (11).

Mother was charged with multiple counts of endangering the welfare of children, multiple counts of recklessly endangering another person, and intimidating or intending to intimidate another person. Mother plead guilty to these charges on April 19, 2016 and was sentenced on July 20, 2016. Mother and Fathers convictions result from the actions surrounding the Minor Children, and the Minor Children are the victims for each one of the counts for conviction.

On February 12, 2016, CYS filed a Motion for Finding of Aggravated Circumstances. A hearing on the Motion was held on August 22, 2016. A Permanency Review Hearing was also held at that time. The Court found that Aggravated Circumstances existed in the instant matter and no additional efforts should be made to reunify the Minor Children with Mother. The Court also found that the Permanency Plan for all three (3) Minor Children should be changed to reflect the goal of Adoption. The Court entered an Order on August 22, 2016 reflecting that decision.

On September 15, 2016, Mother appealed the Court's decision. Mother filed a Concise Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b), alleging: (1) the Court erred in finding Aggravated Circumstances existed as to D█████ C█████, and that no additional efforts should be made to reunify the

3

minor child with Mother; (2) the Court erred in ordering a change of Goal to Adoption for D█████ C█████; (3) the Court erred in finding that Aggravated Circumstances exist as to D█████ C█████, and that no additional efforts should be made to reunify the minor child with Mother; (4) the Court erred in ordering a change of Goal to Adoption for D█████ C█████; (5) the Court erred in finding that Aggravated Circumstances exist as to D█████ C█████, and that no additional efforts be made to reunify the minor child with Mother; and (6) the Court erred in ordering a change of Goal to Adoption for D█████ C█████.

## DISCUSSION

Pursuant to 42 Pa.C.S. §6302, aggravated circumstances exist in the following circumstances:

(1) The child is in the custody of a county agency and either:
 (i) the identity or whereabouts of the parents is unknown and cannot be ascertained and the parent does not claim the child within three months of the date the child was taken into custody; or
 (ii) the identity or whereabouts of the parents is known and the parents have failed to maintain substantial and continuing contact with the child for a period of six months.
(2) The child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent.
(3) The parent of the child has been convicted of any of the following offenses where the victim was a child:
 (i) criminal homicide under 18 Pa.C.S. Ch. 25 (relating to criminal homicide);
(ii) a felony under 18 Pa.C.S. § 2702 (relating to aggravated assault), 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse), 3124.1 (relating to sexual assault) or 3125 (relating to aggravated indecent assault).
 (iii) A misdemeanor under 18 Pa.C.S. § 3126 (relating to indecent assault).
 (iv) An equivalent crime in another jurisdiction.

4

(4) The attempt, solicitation or conspiracy to commit any of the offenses set forth in paragraph (3).
(5) The parental rights of the parent have been involuntarily terminated with respect to a child of the parent. **42 Pa.C.S. §6302.**

Aggravated circumstances must be proven by clear and convincing evidence. Id. Once aggravated circumstances are found, the Court may exercise "its discretion to make decisions regarding the children's best interests, directing its "focus away from any parental 'rights' and toward the protection of these innocent, scarred children...." In re C.B., 861 A.2d 287 (Pa. Super. 2004).

In the current matter, both Mother and Father have plead guilty to criminal charges where the Minor Children were the victims. Based on the CYS investigation and the criminal proceedings in this matter, this Court finds that the Minor Children were both abused and neglected at the hands of Mother and Father, which support a finding of aggravated circumstances under 42 Pa.C.S. §6302(2). Further, the Minor Children have been in placement since June 2, 2014 and have been doing well in their foster homes. The Court believes that it is in the Minor Children's best interest to continue in the care of the foster families in order to protect the Minor Children from reliving past trauma and from further abuse and neglect at the hands of Mother and Father. Both parents will be incarcerated for a significant amount of time, so there is not hope for immediate reunification, and waiting to change the Minor Children's Permanency Plan goals to Adoption would negatively impact the Minor Children.

For the reasons mentioned above, the Court finds that aggravated circumstances exists in the instant matter pursuant to 42 Pa.C.S. §6302 (2), and it is in the Minor Children's best interest to move forward with the goal of Adoption at this time.

5

## CONCLUSION

For the reasons set forth above, this Court's Order of August 22, 2016 is hereby affirmed.

6